Exhibit B

IN THE DISTRICT COURT OF JOHNSON COUNTY
IN THE STATE OF KANSAS

Michele Blakely
    Plaintiff

v.

CARMAX AUTO SUPERSTORES, INC,
AMERICAN CREDIT ACCEPTANCE, LLC
    Defendants

23CV2736
2

## PETITION PURSUANT TO KSA CHAPTER 60

**COMES NOW**, Plaintiff, Michele Blakely, submitting this petition Pro Se, brings legal action pursuant to CHAPTER 60 of the Kansas Statutes Annotated against the aforementioned Defendants for violations under the Kansas Consumer Protection Act, Fair Credit Reporting, and for Fraud. The Plaintiff states the following claims as true and accurate to demand damages from the defendants CARMAX AUTO SUPERSTORES, INC and AMERICAN CREDIT ACCEPTANCE, LLC:

### CLAIM 1 - FRAUD

1. On March 2, 2021, the Plaintiff purchased a 2014 Jeep Cherokee from CARMAX AUTO SUPERSTORES, INC (CARMAX), at their branch location at 6801 East Frontage Road Merriam, Kansas 66204. The court has jurisdiction because the consumer credit transaction, which is the basis of this petition, occurred in Johnson County, Kansas.

1. The consumer loan contract was composed with Federal and Kansas Uniform Consumer Credit Code ("KUCCC") as the applicable laws that govern the consumer loan contract. The consumer loan contract also bears an APR of 28%, which is prima facie evidence that the consumer loan is a supervised loan in accordance with 16a-1-301(46).

2. During the course of this transaction, the Defendant CARMAX AUTO SUPERSTORES, INC made the false representation that its business practices were lawful to make supervised loans in Kansas. In accordance with KUCCC 16a-2-301(1)(a), in order to make supervised loans, a supervised lender license must be first obtained. The Defendant CARMAX AUTO SUPERSTORES, INC does not maintain a supervised lender license in Kansas according to Kansas Office of the State Bank Commissioner registration and Nationwide Multistate Licensing System registry.

3. The Defendant, CARMAX, also made the false representation that a prepaid finance charge was demanded by the "financing company" in the amount of $2,000. When, in fact, Kansas Uniform Consumer Credit Code 16a-2-201(3)(b) states the charge should not have exceeded the lesser of 2% of the amount financed or $100. Unknowingly, the Plaintiff paid the unlawful prepaid finance charge of $2.000.

COURT CLERK-JOCO,KS
MAY 17 '23 AM8:33

4. CARMAX AUTO SUPERSTORES, INC made further Truth in Lending Act misrepresentations by adding prohibited charges to determine the computation of the finance charge.

5. The Defendant, CARMAX, who is not licensed as a supervised lender in Kansas, subsequently and unlawfully assigned the consumer loan contract to AMERICAN CREDIT ACCEPTANCE, LLC.

6. The Defendant, AMERICAN CREDIT ACCEPTANCE, LLC (ACA), does not maintain a supervised lender license in Kansas as an assignee who enforces rights on a contract against a debtor pursuant to 16a-2-301(c).

7. At the time of making the representations, both Defendants had knowledge that they were false or untrue.

8. The Defendants made the representation with the intent that the Plaintiff would rely on each of the Defendants' representations. Each Defendant has the duty to obtain a supervised lender license but willfully failed to do so.

9. The Plaintiff, being unaware that the Defendants' representations were false, reasonably relied on both Defendants' representations by signing and making payments on a contract which is an unauthorized supervised loan. The Plaintiff made the Defendants aware of the misrepresentations on February 22 and March 24th, 2023.

10. The Plaintiff suffered from severe humiliation, emotional distress, and financial loss due to the Defendants' false or untrue representations. Plaintiff claims actual damages of $7,982.50 and seeks remedy pursuant to 16a-5-201(2), 16a-5-201(3); amounting to $15,965.00.

## CLAIM 2 – KANSAS CONSUMER PROTECTION ACT VIOLATIONS

11. In the course of the transaction, both Defendants' representations constituted acts of deception. Specifically, the Defendants made willful use of oral and written representation of the falsehood and ambiguity of a material fact indicating each Defendant has lawful authority to conduct and/or be assigned consumer loans in Kansas. This is a violation of the Plaintiff's protection under the Kansas Consumer Protection Act pursuant to Kansas Revisor Statute 50-626(b)(2).

12. The Defendants' willful failure to state the material fact, willful concealment, and omission of the material fact of the ability to lawfully make and be assigned consumer loans in Kansas. This is a violation of the Plaintiff's protection under the Kansas Consumer Protection Act pursuant to Kansas Revisor Statute 50-626(b)(3).The Defendants willfully concealed or omitted the material fact of lawful authority in order to induce the Plaintiff into a consumer loan contract to defraud the Plaintiff.

13. Due to the consumer loan contract being void at and since inception, pursuant to 16a-5-201(2), the Defendants falsely stated with reason to know that the transaction involves the consumer obligation of the Plaintiff when, in fact, the Plaintiff had no obligation(s) within the consumer loan contract. This is a violation of the Plaintiff's protection under the Kansas Consumer Protection Act pursuant to Kansas Revisor Statute 50-626(b)(8).

14. The Plaintiff relied on the falsehood and ambiguity of the material facts both Defendants presented to the Plaintiff. The Plaintiff unknowingly entered into the consumer loan contract based on an uninformed decision on a credit transaction by the Defendants who had the duty to disclose material facts and consumer rights but both Defendants intentionally failed to disclose important material facts and consumer rights. The Defendants willful deception and coercive intent to defraud the Plaintiff through a consumer credit transaction has caused irreparable damages and significant financial loss to the Plaintiff.

## IDENTITY THEFT

15. The Defendant, CARMAX, required the Plaintiff to disclose personal identifying information. The Defendant, CARMAX, is without lawful authority, reason, or cause to obtain the Plaintiff's personal identifying information because the premise of the obtainment was to induce the Plaintiff into a supervised loan. The Defendant, CARMAX, does not possess a supervised lender license. CARMAX then sold and transferred documents containing the Plaintiff's personal identifying information to the Defendant, AMERICAN CREDIT ACCEPTANCE, LLC, with the intent to defraud the Plaintiff to receive monetary benefit.

16. The Defendant, ACA, obtained and purchased documents containing the Plaintiff's personal identifying information from the Defendant, CARMAX, with the intent to defraud the Plaintiff to receive monetary benefit. ACA's purpose to purchase the supervised loan to receive monetary benefit from the Plaintiff through the false representation of a lawful assignment. ACA further trafficked the Plaintiff's personal identifying information to unauthorized third parties to harass and ruin the reputation and credibility of the Plaintiff with the intent to defraud the Plaintiff by coercing unlawful payments in an oppressive manner.

17. The Defendants committed acts of identity theft to defraud the Plaintiff pursuant to Kansas Revisor Statute 21-6107(a)(1). CARMAX nor ACA has the legal authority or capacity to obtain, use, transfer, sell or purchase the identifying information of the Plaintiff. The Defendants had no lawful purpose to obtain, use, transfer, sell, or purchase the Plaintiff's identifying information through a consumer credit transaction evidenced by a supervised loan. Neither Defendant has the authority to conduct or be a part of in any capacity a supervised loan because neither party maintains a supervised lender license in Kansas, pursuant to 16a-2-301(1).

18. The aggrieved Plaintiff seeks damages in accordance with Kansas Revisor Statute 50-6,139 constituting the violation of identity theft as an unconscionable act under the Kansas Consumer Protection Act. Pursuant to 50-636(a), Plaintiff seeks $10,000 per violation totaling $40,000 as statutory relief requested from each Defendant for their actions, respectively.

### CLAIM 3- FAIR CREDIT REPORTING VIOLATIONS

19. Due to the illegality of the consumer loan contract in its entirety, the Defendants had no lawful purpose to require the Plaintiff to disclose personal identifying information and personal financial information in order to obtain goods through a credit transaction. Neither Defendant had the legal authority to conduct the business of making or taking assignment by enforcing rights on a supervised loan in Kansas, pursuant to 16a-2-301(1). The Defendants obtained the Plaintiff's information under false and fraudulent pretenses. The Defendant, CARMAX, required the Plaintiff to disclose the information in order to obtain a consumer credit report on the Plaintiff. The Defendant, ACA, requested the results of the consumer report from the Defendant, CARMAX. CARMAX, then trafficked the Plaintiff's consumer report to ACA. Such requests and trafficking were under the guise that the Defendants needed such information to determine the acceptability and credibility of the Plaintiff. The Defendants subsequently used the unlawful and false obtainment of the Plaintiffs personal identifying information to induce the Plaintiff into an unauthorized supervised loan riddled with prejudicial terms and conditions. The Defendants' prejudicial terms and conditions were fraudulently composed with the intent to defraud the Plaintiff and cause detrimental harm to the Plaintiff's reputation. The Defendants are liable for their actions that have

violated the rights of the Plaintiff in accordance with Kansas Revisor Statute 50-718. The Defendants' false obtainment of the Plaintiff's personal identifying information has caused the Plaintiff to be subject to humiliation, embarrassment and prejudice through its false obtainment and caused the Plaintiff severe financial loss. The Plaintiff seeks civil remedy for actual damages of $15,965.00, such punitive damages the honorable court deems just.

20. The Defendants have conspired in an agreement to defraud the Plaintiff knowingly and willingly. Each Defendant knew or should have known their duty to obtain a supervised lender license before obtaining the Plaintiff's personal identifying information. Instead, the Defendant's willfully failed to uphold such duty and induced the Plaintiff in an unauthorized supervised loan. The Defendants caused substantial financial loss and emotional distress.

Pursuant to K.S.A. 60-211, the Plaintiff certifies that information and belief formed are to the best of her knowledge. The circumstances under which this action is pursued are not being presented for any improper purpose. The Plaintiff asserts the factual contentions set forth have evidentiary support.

**WHEREFORE**, the Plaintiff prays that the court will render judgement in favor of the Plaintiff's claims asserted as fact in this petition. The Plaintiff is entitled to damages as a matter of law and actual damages accrued to the Plaintiff due to the willful acts of the Defendants in the amount of $71,930. The Defendants conspired to achieve the parallel objective to defraud the Plaintiff. The Plaintiff further prays that the court deems just that each Defendant pays actual and statutory damages for its willful acts committed, respectively. The Plaintiff also seeks punitive damages the court deems just, along with costs.

Respectfully submitted,

Michele Blakely, Plaintiff, Pro Se
1155 Treadway Drive Deltona, FL 32738
321-477-9873
Mblakely91@gmail.com

# CarMax RETAIL INSTALLMENT CONTRACT

**Consumer Credit Sale**

Contract Number: 18303554
Contract Date: 03/02/2021

In this Contract, the words "you" and "your" mean anyone signing this Contract as a Buyer or Co-Buyer. The words "we", "us", and "our" mean the Seller or anyone to whom the Seller transfers its rights under this Contract. You understand that you may buy the Vehicle described below for cash or credit. By signing this Contract, you choose to buy the Vehicle on credit under the terms and conditions on all pages of this Contract. If there is a Buyer and a Co-Buyer, you are each individually liable to us for any amount due under this Contract.

| | Name | Address | Zip Code |
|---|---|---|---|
| Seller | CARMAX - KANSAS CITY | 6801 EAST FRONTAGE RD | MERRIAM, KS 66204 |
| Buyer | MICHELE KIERRA BLAKELY | 10310 E 42ND ST | KANSAS CITY, MO 64133 |
| Co-Buyer | N/A | N/A | N/A |

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your downpayment of $2,000.00 |
|---|---|---|---|---|
| 28.00 % | $ 14,915.58 e* | $ 13,580.58 | $ 28,496.16 e* | $ 30,496.16 e* |

*e means an estimate

**Your Payment Schedule will be:**

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 72 | $ 395.78 | Monthly, beginning 04/16/2021 |

**Security.** You are giving a security interest in the motor vehicle being purchased.

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge that is the lesser of $25 or 5% of the unpaid amount of the installment.

**Prepayment.** If you pay amounts owed under this Contract early, you will not have to pay a penalty.

**Additional Information.** See the remainder of this Contract for additional information about nonpayment, default, any required repayment in full before the scheduled due date, prepayment refunds, and security interests.

---

**Optional GAP Waiver Agreement (GAP contract).** A GAP contract is a debt cancellation agreement. It is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. The charge for a GAP contract is in item D.1. Your GAP contract is a part of this Contract. See your GAP contract for details on the protection it provides.

Term _____N/A_____ (in months)

I want the optional GAP contract.
Buyer Signs: __N/A__

You agree to buy and we agree to sell you the following Vehicle:

Year/Make/Model  2014/JEEP/CHEROKEE
VIN  1C4PJMCBXEW274939
New _____  Used  X

The primary purpose and use for which you are purchasing the Vehicle is:
Personal, Family, or Household   X
Business or Commercial _____  Agricultural _____

As part of this transaction, you sold the following vehicle(s) to Seller as a "Trade-In":
Year/Make/Model  N/A
VIN  N/A
Year/Make/Model  N/A
VIN  N/A

**YOUR PROMISE TO PAY**

You agree to pay us the Amount Financed and Finance Charge provided for in this Contract according to the Payment Schedule above. This is a simple finance charge contract. This means we will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. The Finance Charge, Total of Payments, and Total Sale Price shown above are based on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Also, if you pay late it is likely that your final payment will be larger than originally scheduled. You must make your payments to the Seller at the address shown above. If this Contract is transferred, you agree to make your payments to the subsequent holder of this Contract (Assignee) at the address provided by the Assignee or Seller.

## ITEMIZATION OF AMOUNT FINANCED

| | | | |
|---|---|---|---|
| **A.** | **CASH PRICE** | | |
| 1. | Cash Price of Vehicle | $ | 13,998.00 |
| 2. | Cash Price of CarMax Accessories | $ | 0.00 |
| 3. | CarMax Processing Fee | $ | 299.00 |
| 4. | Sales / Excise Tax | $ | 1,238.83 |
| 5. | Other: N/A | $ | 0.00 |
| 6. | Other: N/A | $ | 0.00 |
| 7. | **Total Cash Price** [1 through 6] | $ | 15,535.83 |
| **B.** | **DOWNPAYMENT** | | |
| 1. | Cash Downpayment | $ | 2,000.00 |
| 2. | Manufacturer's Rebate | $ | 0.00 |
| 3. | Credit From "Trade-In" Sold to CarMax | | |
| | a. Value of "Trade-In" | $ | 0.00 |
| | b. Proceeds from "Trade-In" Retained by Buyer | $ | 0.00 |
| | c. Pay-Off of "Trade-In" | $ | 0.00 |
| | d. Net Value of "Trade-In" [a minus b minus c, if negative, enter "0" and see line D.4. below] | $ | 0.00 |
| 4. | Other: N/A | $ | 0.00 |
| 5. | **Total Downpayment** [1 through 4] | $ | 2,000.00 |
| **C.** | **UNPAID BALANCE OF CASH PRICE** [A minus B] | $ | 13,535.83 |
| **D.** | **OTHER CHARGES INCLUDING AMOUNTS PAID TO OTHERS ON YOUR BEHALF** | | |
| 1. | Optional GAP Waiver Agreement | $ | 0.00 |
| 2. | To Public Officials | | |
| | a. MO Registration Fees | $ | 21.00 |
| | b. MO Title Fee | $ | 8.50 |
| | c. N/A | $ | 0.00 |
| | d. N/A | $ | 0.00 |
| | e. N/A | $ | 0.00 |
| | f. KS Temp Tag Fee | $ | 3.00 |
| | g. N/A | $ | 0.00 |
| | h. Agent Fees | $ | 12.00 |
| | i. N/A | $ | 0.00 |
| | j. MO Railroad Crossing Fee | $ | 0.25 |
| 3. | To N/A for Optional Extended Service Contract | $ | 0.00 |
| 4. | To N/A for Pay-Off of the "Trade-In" where Pay-Off exceeds value of "Trade-In" [B(3)(c) minus B(3)(a)] | $ | 0.00 |
| 5. | **Total of Other Charges and Amounts Paid to Others on Your Behalf** [1 through 4] | $ | 44.75 |
| **E.** | **AMOUNT FINANCED** [C plus D] | $ | 13,580.58 |

*Seller may retain a portion of this amount.

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 1. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials  MKB                    Co-Buyer's Initials _____

RIC9016
Order #: 1430451
Rev. Date 03/20
DMS Tracking #: 5489394   Reprint #: 0
Printed 03/02/2021 06:21 pm 1 of 1



MIS ID 50000012
Legal - GF

## RETAIL INSTALLMENT CONTRACT
### Other Important Agreements

**Your Representations.** You promise that you have given true and correct information in your credit application. You understand that in entering this Contract we have relied on the representations you have made to us. Upon request, you agree to provide us with documents and other information necessary to verify any item contained in your credit application.

**Applicable Law.** Federal law and the law of the State of Kansas apply to this Contract. Specifically, this Contract is subject to the Kansas Uniform Consumer Credit Code. If any provision is not valid, all others stay valid to the extent allowed by applicable law.

**Late Charge.** You will pay a late charge as described in the Late Charge section on Page 1 of this Contract.

**Returned Check Charge.** You will pay a service charge of $30 for any payment made by check, draft, or other written order that your financial institution refuses to pay because of insufficient funds, the lack of an account, or incorrect or insufficient signature.

**Care, Use, and Location of the Vehicle.** You agree to pay us all you owe under this Contract even if the Vehicle is damaged, destroyed, or missing. You agree to keep the Vehicle in good condition and repair. If there is any loss or damage to the Vehicle, you will give us prompt written notice of the loss or damage. You agree not to use the Vehicle for hire or to sell, rent, lease, or transfer any interest in the Vehicle or this Contract. You agree that you will not permit the Vehicle to be used in any illegal manner or expose the Vehicle to misuse, seizure, confiscation, or involuntary transfer. The Vehicle will be kept at the address you provided to us in this Contract as shown on Page 1. You agree to notify us in writing of any change in your address or the location at which the Vehicle is regularly located. You are not allowed to remove the Vehicle from the United States. You may, however, take the Vehicle to Canada as long as it is for a period of 30 days or less.

**Insurance Requirements.** You agree to have physical damage insurance covering loss or damage to the Vehicle as long as amounts are owed under this Contract. The insurance must have comprehensive, collision, fire, and theft coverage in amounts acceptable to us and with the minimum available deductible. All required insurance must be with a properly licensed insurer reasonably acceptable to us and must name us as an additional insured and loss-payee. You agree to give us evidence of all required insurance promptly upon request. You agree that any insurance proceeds payable due to damage or loss of the Vehicle will be paid directly and solely to us. At our choice, we may use the insurance proceeds to repair the Vehicle or to pay amounts owed under this Contract. You agree that we may settle any insurance claim or sign any insurance checks on your behalf as necessary and if allowed by law.

**Failure to Maintain Insurance.** If you fail to maintain the required physical damage insurance, we may buy it for you. At our choice, the insurance we buy may only cover our interest in the Vehicle and be limited to what you owe under this Contract at the time. This means the insurance we buy may not cover your interest in the Vehicle or any loss that you incur. We will charge you for any insurance we purchase. The insurance we buy may cost more than the insurance you could buy on your own. The charge for the insurance will be the amount advanced for it and a finance charge at the Annual Percentage Rate shown on Page 1 of this Contract or, if less, the highest rate allowed by law.

**Security Interest.** You give us a security interest in the Vehicle, any proceeds received for the Vehicle, and any accessories, equipment, and replacement parts installed on the Vehicle. You also give us a security interest in any insurance, service, or other contracts you finance for you and all proceeds from any insurance, service, or other contracts on the Vehicle, including refunds of premiums or charges from the contracts we finance for you. The security interest you are giving us secures all amounts owed by you under this Contract and all the other agreements you have made in this Contract.

**Optional Service or GAP Contracts.** This Contract may contain charges for an optional service or GAP contract. If you are in default under this Contract, you agree that we may claim benefits under any optional contract or cancel it to obtain a refund for unearned charges and reduce amounts you owe. If you cancel an optional contract, you authorize us to receive any refund for unearned charges and apply it to what you owe under this Contract.

**"Trade-In" and Downpayment.** You promise that you own and have valid title to any vehicle you sold to us as a "Trade-In." You represent that any "Trade-In" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this Contract and that you have not borrowed it.

**Title, Taxes, and Other Charges.** You agree to make sure that the title to the Vehicle shows our security interest. You also agree that we will be the only party with a security interest in the Vehicle and that our security interest will be the only security interest that appears on the title. You agree that you are, or will be, the registered owner of the Vehicle and that you will comply with all registration, licensing, tax, and title laws that apply to the Vehicle. You agree to pay when due all taxes, fees, repair bills, storage bills, fines, assessments, and other charges relating to the Vehicle. At our choice, we may pay any of these items to protect our interest in the Vehicle. If we do so and if allowed by law, you agree to repay us at our request.

**Default and Required Repayment in Full.** You will be in default if you fail to make any payment required by this Contract. You will also be in default if the prospect of payment, performance, or realization of the Vehicle is significantly impaired (the burden of establishing the prospect of significant impairment is on the Seller). If you default, subject to any right to notice or cure you may have, we may require that you pay all you owe on this Contract at once. All amounts owed following your default will continue to accrue finance charge or interest at the Annual Percentage Rate shown on Page 1 of this Contract or the highest rate allowed by law until paid in full.

**Other Remedies Upon Default.** Upon your default and after providing any required notice or right to cure, we may take (repossess) the Vehicle from you as long as we do so peacefully. All accessories, equipment or replacement parts will remain with the Vehicle following repossession.

**Getting the Vehicle and Property Back After Repossession.** If we repossess the Vehicle, you have the right to get it back until we sell it. This is your right to redeem. We will tell you what you need to do or how much you need to pay to redeem the Vehicle. If any personal property is in the Vehicle, we will store it for you at your expense. If you do not pick up your personal property, we will sell it if the law allows us to do so.

**Sale of the Repossessed Vehicle.** We will send you a written notice of sale before we sell the Vehicle. We will apply money from a sale to our expenses and then to amounts you owe under this Contract. Our expenses may include costs incurred by us in repossessing the Vehicle, holding and storing it, preparing it for sale, and selling it. If there is money left over, we will pay it to you unless we are required to pay it to someone else. If there is not enough money to pay all you owe, you will have to pay us the remaining balance.

**Collection Costs.** You agree to pay our reasonable attorney's fees, plus court costs, if we refer this Contract for collection or enforcement to an attorney who is not our salaried employee. The total costs of collection will not exceed 15% of the amount owed under the Contract after default.

**Application of Payments and Partial Prepayments.** We may apply each payment to earned and unpaid finance charge and to other amounts you owe under this Contract in any order we choose. If you make a partial prepayment you must still continue to make your regular monthly payments as scheduled in this Contract.

**Delay in Enforcing Rights.** We will not lose any of our rights under this Contract if we delay or refrain from enforcing them. For example, we may extend the time for making some payments without extending others. Our acceptance of any late or partial payment does not excuse your late or partial payment or mean that you may continue to make late or partial payments.

**Communications.** You agree that we may monitor and record telephone calls regarding this Contract. You expressly consent that we may contact you (by calls, emails, text messages or other electronic messages) for any purpose related to this Contract by any means, including but not limited to the use of prerecorded/artificial voice messages or automatic telephone dialing devices. Your express consent applies to any email addresses or telephone numbers we obtain or you provide in any manner and at any time, including email addresses or cellular telephone numbers for which you may incur voice, data or other charges.

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 2. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials _MKB_____     Co-Buyer's Initials _____

RIC9016
Rev. Date 03/20

# RETAIL INSTALLMENT CONTRACT
## Other Important Agreements

### ARBITRATION PROVISION

DMS Tracking #: 5489395   Reprint #: 0

Printed 03/02/2021 06:21 pm 1 of 1

This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. **By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision.**

For purposes of this Arbitration Provision, references to "we," "us" and "our" mean the Seller, including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract.
**IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:**

- ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.
- DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.
- YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").
- OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

**a. What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract, including but not limited to:

- Initial claims, counterclaims, cross-claims and third-party claims;
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (f) of this Arbitration Provision.

**b. Commencing Arbitration.** Either you or we may require any Claim to be arbitrated by first sending to the other party, by certified mail, a written notice of dispute ("Notice"). This Notice shall (1) describe the nature and basis of the Claim and (2) set forth the specific relief sought. If we do not reach an agreement to resolve the Claim within 30 days after the Notice is received, you or we may commence an arbitration proceeding.

Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules and procedures of the arbitration Administrator. Arbitration is not mandatory for an individual Claim that you or we may choose to bring in small claims court or the state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, you or we then may choose arbitration.

**c. Choosing the Administrator.** If you initiate the arbitration proceeding, you may choose either of the following arbitration Administrators: (1) American Arbitration Association, 120 Broadway, New York, NY 10271, www.adr.org, (800) 778-7879 or (2) JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com, (800) 352-5267. The Administrator you choose will have rules that apply to the proceeding. Important information regarding the arbitration process and more complete information regarding arbitration procedures may be found at either Administrator's website. If the Administrator you choose is unable or unwilling or ceases to serve as the Administrator, you or we may choose the other Administrator. If both Administrators are unable or unwilling or cease to serve as the Administrator, you or we may choose another Administrator, subject to the other's approval. In all cases, any arbitrator must be a lawyer or a retired judge with at least 10 years of legal experience. If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose one for you. No matter which Administrator is chosen, you shall have the right to be represented by an attorney of your own choosing, subject to any limitations in the Administrator's rules.

**d. Choosing the Location.** Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

**e. Paying for Arbitration.** Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. The fees and costs of any arbitration, including any initial filing fees, shall be paid in accordance with the rules and procedures of the Administrator. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or the Administrator's rules, procedures or standards provide otherwise.

**f. Class Action Waiver. You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim.** Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's Claim or Claims. Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

**g. Right to Discovery.** The parties shall have the right to discovery of non-privileged information and documents relevant to the Claim, subject to the rules and procedures of the Administrator.

**h. Arbitration Result and Right of Appeal.** Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. Any party can appeal the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal, unless applicable law or the Administrator's rules provide otherwise. However, we will consider any good faith, reasonable request for us to pay all or any part of those fees if you are the appealing party.

**i. Governing Law.** This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all individual remedies permitted by the substantive law that would apply if the action were pending in court.

**j. Rules of Interpretation.** This Arbitration Provision survives the repayment of all amounts owed to us, the transfer of the Contract, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. Except as provided in paragraph (f), if any part of this Arbitration Provision is determined to be invalid or unenforceable, this Arbitration Provision and the Contract will remain enforceable. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Contract or any other contract between you and us, this Arbitration Provision will govern.

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 3. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials  MKB                                    Co-Buyer's Initials _____

RIC9016
Rev. Date 03/20

MIS ID: 50000013

## RETAIL INSTALLMENT CONTRACT
**Other Important Agreements**

### NO LIABILITY INSURANCE INCLUDED
LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.

PROPERTY INSURANCE: YOU ARE REQUIRED TO OBTAIN AND MAINTAIN INSURANCE ON THE VEHICLE, ENDORSED TO PROTECT US AS LOSS-PAYEE. YOU MAY OBTAIN THE INSURANCE FROM ANY AGENT OR INSURANCE COMPANY YOU CHOOSE REASONABLY ACCEPTABLE TO US.

**YOUR INSURANCE INFORMATION**
LIENHOLDER/LOSS-PAYEE American Credit Acceptance   INSURED'S NAME MICHELE K BLAKELY
PHYSICAL DAMAGE DEDUCTIBLES – COMPREHENSIVE $ 500.00   COLLISION $ 500.00
INSURANCE COMPANY LIBERTY MUTUAL
POLICY NUMBER AOV2438098634010   EFFECTIVE DATE 03/02/2021   EXPIRATION DATE 03/02/2022
INSURANCE AGENT NAME LIBERTY MUTUAL   TELEPHONE NUMBER (800) 290-7933

You agree that you have or will obtain the required insurance coverage as shown above and you acknowledge that this is required by the Insurance Requirements section on Page 2 of this Contract.

USED CAR BUYERS GUIDE. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

SPANISH TRANSLATION: GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.

The following notice applies only to purchases primarily for personal, family, or household purposes.

**NOTICE**
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**VEHICLE RETURN POLICY**
You may return the Vehicle to CarMax for a refund within 7 calendar days if the condition of the Vehicle does not change. This policy only applies to used vehicles.

**ENTIRE AGREEMENT**
This Contract contains the entire agreement between you and us relating to this Contract. We may agree to extend or defer a payment and provide you written confirmation. Any other change to this Contract must be in a writing signed by us. No oral modifications to this Contract are binding.

**ELECTRONIC DISCLOSURE**
☐ If checked, you agree to use electronic records and electronic signatures to document this Contract. Your electronic signatures on electronic records will have the same effect as signatures on paper documents. We may designate one authoritative copy of this Contract. If we do, the authoritative copy will be the electronic copy in a document management system we designate for storing authoritative copies. We may convert the authoritative copy to a paper original. We will do so by printing one paper copy marked "Original." This paper original will have your electronic signature on it. It will have the same effect as if you had signed it originally on paper. If you agree to use electronic records and electronic signatures, we will comply with all applicable federal, state and local laws and regulations.

**NOTICE TO CONSUMER:**
1. Do not sign this Contract before you read it.
2. You are entitled to a copy of this Contract.
3. You may prepay the unpaid balance at any time without penalty.

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 4. By signing below you represent that you have read and agree to all provisions on all pages, including the Arbitration Provision on Page 3 of this Contract. You are also confirming that you have received a completely filled-in copy of this Contract and any optional GAP Waiver Agreement, each of which has been signed by the Seller.

Seller CarMax Auto Superstores, Inc.   Buyer's Signature /s/
By /s/   Co-Buyer's Signature

### ASSIGNMENT
Seller hereby sells, assigns and transfers to American Credit Acceptance (Assignee) this Contract, all obligations of Buyer and Co-Buyer hereunder, all rights, powers, and privileges herein given to Seller, and all right, title, and interest of Seller in and to the property securing this Contract. If on the date of this assignment there is in effect a Dealer Agreement between Seller and Assignee pertaining to the sale of contracts to Assignee by Seller, the sale and assignment of this Contract to Assignee is made subject to all the terms and conditions of that Dealer Agreement.

Seller/Assignor /s/
Date 03/02/2021   Title BM

RIC9016
Rev. Date 03/20

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
150 W SANTE FE ST
OLATHE, KS 66061

Michele Blakely

Case No. 23CV2736
Division No. 2

**Plaintiff**

VS.

AMERICAN CREDIT ACCEPTANCE, LLC

**Defendant**

### REQUEST AND SERVICE INSTRUCTION FORM

**To: Clerk of the District Court**

Please issue a: SUMMONS AND PETITION

in this action for: AMERICAN CREDIT ACCEPTANCE, LLC

whose address for service is: C T CORPORATION SYSTEM
112 SW 7TH STREET SUITE 3C, TOPEKA, KS 66603

**Service is requested as indicated below:**

[✓] A. Service through the Sheriff of SHAWNEE County, State of KANSAS. Returns may be faxed to (913) 715-3401 7 days a week – 24 hour a day.

[ ] B. Service by an authorized process server.

[ ] C. Certified mail with a Return Receipt service by the undersigned litigant or attorney, who understands that is their responsibility to obtain service and to make the return to the clerk. The postal "green card" for service must be filed with the Clerk's office to prove service.

[ ] D. Certified mail service by the Sheriff of Johnson County Kansas. Sheriff of Johnson County does not do Out-of-state service by certified mail.

Signature: [signature]
Pro Se: Michele Blakely
Address: 1155 Treadway Drive
Deltona, FL 32738

Telephone No. 321-477-9873
Email: mblakely91@gmai.com

COURT CLERK-JOCO,KS
MAY 17 '23 AM 8:36

Revised 04/2019

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
150 W SANTE FE ST
OLATHE, KS 66061

Michele Blakely

**Plaintiff**

Case No. 23CV2736
Division No. 2

VS.

CARMAX AUTO SUPERSTORES, INC

**Defendant**

## REQUEST AND SERVICE INSTRUCTION FORM

**To: Clerk of the District Court**

Please issue a: SUMMONS AND PETITION

in this action for: CARMAX AUTO SUPERSTORES, INC

whose address for service is: THE PRENTICE-HALL CORPORATION SYSTEM, KANSAS, INC

2900 SW WANAMAKER DRIVE SUITE 204, TOPEKA, KS 66614

Service is requested as indicated below:

[✔] A. Service through the Sheriff of SHAWNEE County, State of KANSAS . Returns may be faxed to (913) 715-3401 7 days a week – 24 hour a day.

[ ] B. Service by an authorized process server.

[ ] C. Certified mail with a Return Receipt service by the undersigned litigant or attorney, who understands that is their responsibility to obtain service and to make the return to the clerk. The postal "green card" for service must be filed with the Clerk's office to prove service.

[ ] D. Certified mail service by the Sheriff of Johnson County Kansas. Sheriff of Johnson County does not do Out-of-state service by certified mail.

Signature: _[signed]_
Pro Se: Michele Blakely
Address: 1155 Treadway Drive
Deltona, FL 32738

Telephone No. 321-477-9873
Email: mblakely91@gmai.com

COURT CLERK-JOCO,KS
MAY 17 '23 AM 8:36

Revised 04/2019

J023CV2736

5-17
SP30

11

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

BLAKELY, MICHELE

                Plaintiff                              Case No: 23CV02736

    vs                                                  Division: 2
                                                          K.S.A. Chapter 60

AMERICAN CREDIT ACCEPTANCE LLC,
                        Defendant *CT Corporation System*
*112 SW 7th St, Ste 3C, Topeka 66603*

## Return of Service

\_\_\_\_ I certify that I have served the following *SP* _____

by delivering a copy of each to _____ ,

personally at _____
                (Address where served)

on _____day of _____, 20_____at _____hrs.

\_\_\_\_ I certify that I was **NOT** able to personally serve the documents issued

I hereby certify under penalty of perjury that the foregoing is true and correct.

Executed _____
     (Date)

                        _____
                        Sheriff/Deputy of Shawnee County, Kansas

SP
CT CORPORATION SYSTEM
AMERICAN CREDIT ACCEPTANCE LLC
112 SW 7TH STE, STE 3C
TOPEKA, KS 66603
J023CV002736   5040572000
05/17/23   06/23/23

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

BLAKELY, MICHELE

        Plaintiff

vs

AMERICAN CREDIT ACCEPTANCE LLC,
        Defendant

Case No: 23CV02736
Division: 2
K.S.A. Chapter 60

## SUMMONS

To the above-named defendant:

YOU ARE HEREBY NOTIFIED that an action has been commenced against you in this court. You are required to file your answer to the petition with the court and to serve a copy upon the plaintiff's attorney, as follows:

    Name:    MICHELE BLAKELY
    Address: 1155 TREADWAY DRIVE
              DELTONA, FL 32738
    Phone:  (321) 477-9873

Within 21 days after service of summons upon you.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the attached petition, which is incorporated herein by reference. Any related claim which you may have against the plaintiff must be stated as a counterclaim in your answer, or you will thereafter be barred from making such claim in any other action.



/s/ Jennie Leach
Clerk of the District Court

Dated: May 17, 2023

Johnson County Court House, 150 W. Santa Fe St., Olathe, KS 66061

Clerk of the District Court, Johnson County Kansas
5/17/2023 10:40:16 ST

5-17
SP 30
11

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL COURT DEPARTMENT

BLAKELY, MICHELE

      Plaintiff

vs

CARMAX AUTO SUPERSTORES INC,

      Defendant

Case No: 23CV02736
Division: 2
K.S.A. Chapter 60

The Prentice-Hall Corp. Sys. KS, Inc.
2900 SW Wanamaker Dr, Ste 204
Topeka 66614

## Return of Service

Agent Service ✓ I certify that I have served the following __SP__

by delivering a copy of each to __Lauren Musick__

personally at __2900 S.W. Wanamaker Dr. Ste. 204__
(Address where served)

on __31st__ day of __May__, 20__23__ at __10:37__ hrs.

____ I certify that I was **NOT** able to personally serve the documents issued

I hereby certify under penalty of perjury that the foregoing is true and correct

Executed __5-31-23__
(Date)

__K.H. 1093__ (signature)

10:37

Sheriff/Deputy of Shawnee County, Kansas

SP
J023CV002736
05/17/23

THE PRENTICE-HALL CORP SYSTEM KS, INC
CARMAX AUTO SUPERSTORES, INC
2900 SW WANAMAKER DR STE 204
TOPEKA, KS 66614-4188
504057190D
06/23/23

NC
COURT CLERK-JOCO,KS
'23 JUN 5 PM 3:03

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
150 W SANTE FE ST
OLATHE, KS 66061

Michele Blakely

Case No. 23CV2736
Division No. 2

**Plaintiff**

VS.

CARMAX AUTO SUPERSTORES, INC

**Defendant**

## REQUEST AND SERVICE INSTRUCTION FORM

To: Clerk of the District Court

Please issue a: SUMMONS AND PETITION

in this action for: CARMAX AUTO SUPERSTORES, INC

whose address for service is: THE PRENTICE-HALL CORPORATION SYSTEM, KANSAS, INC
2900 SW WANAMAKER DRIVE SUITE 204, TOPEKA, KS 66614

Service is requested as indicated below:

[✓] A. Service through the Sheriff of SHAWNEE County, State of KANSAS. Returns may be faxed to (913) 715-3401 7 days a week – 24 hour a day.

[ ] B. Service by an authorized process server.

[ ] C. Certified mail with a Return Receipt service by the undersigned litigant or attorney, who understands that is their responsibility to obtain service and to make the return to the clerk. The postal "green card" for service must be filed with the Clerk's office to prove service.

[ ] D. Certified mail service by the Sheriff of Johnson County Kansas. Sheriff of Johnson County does not do Out-of-state service by certified mail.

Signature: [signed]
Pro Se: Michele Blakely
Address: 1155 Treadway Drive
Deltona, FL 32738

Telephone No. 321-477-9873
Email: mblakely91@gmai.com

COURT CLERK-JOCO, KS
MAY 17 '23 AM 8:36

Revised 04/2019